**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN 30 2004

HAROLD BAILEY,

       Plaintiff,

CLERK

vs.                  No. CIV 02-1591 MCA/WDS

BRADFORD ALLISON, BARBARA
LYNN, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Name John and Jane Doe Defendant* [Doc. 29], filed January 14, 2001; Defendants' *Motion to Dismiss* [Doc. 35], filed January 30, 2004; and *Defendants' Summary Judgment Motion* [Doc. 42], filed February 5, 2004. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's *Motion to Name John and Jane Doe Defendant*, **DENIES AS MOOT** Defendants' *Motion to Dismiss*, and **GRANTS** *Defendants' Summary Judgment Motion*.

## I. BACKGROUND

Plaintiff Harold Bailey is an African-American male who is, and has since 1987 been, an employee of Defendant Albuquerque Public Schools System (APS). [Doc. 7 at 2]. Bailey, who holds a Ph.D in American Studies with an emphasis on Education Administration, is also President of the Albuquerque branch of the NAACP, as well as a



longtime community activist promoting the causes of racial equality, human and civil rights, and anti-discrimination both in society at large and within APS in particular. [Id.; Doc. 44, Exh. 4, Sept. 30, 2003 deposition of Harold Bailey at 90].

On April 3, 2000, Bailey, then, as now, a special education teacher with APS, filed a complaint with the United States Department of Education, alleging discriminatory hiring practices within APS. [Doc. 7 at 2-3; see also Doc. 44, Exh. 2, Resume of Harold Bailey]. On July 18, 2000, Bailey's complaint was the subject of an article in the Albuquerque Journal. Bailey was quoted several times in the article. [Doc. 7 at 3; Doc. 44, attached July 18, 2000 Albuquerque Journal article]. More than one year later, on July 30, 2001, APS posted a job announcement for the position of Director of Community Engagement. [Doc. 30 at 2]. Bailey filed an application for the position on August 3, 2001 but was denied an interview and, consequently, was unable to compete for the position. A white male, Don Whatley, was hired instead. [Doc. 7 at 3]. On October 11, 2001, Bailey, along with Joycelyn Jackson, an African-American woman and co-applicant for the position who was similarly denied an interview, filed a complaint with APS's Equal Employment Opportunity (EEO) office, alleging racial discrimination in the interviewing and hiring process. Despite the EEO complaint, APS has refused to reconsider its decision not to promote Bailey. [Id.].

Thereafter, Bailey, through counsel, filed a *First Amended Complaint for Damages* against APS; Bradford Allison, Superintendent of APS, in his individual and official

capacities[1]; Barbara Lynn, Director of APS's EEO office, in her individual and official capacities; and John and Jane Doe, to-be-named-later members of the Search and Selection Committee for the Director of Community Engagement, in their individual and official capacities. [Doc. 7]. In his *Complaint*, Bailey alleged racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983 (Counts I and III); violation of his First Amendment rights (Count II); breach of contract (Count V); and entitlement to punitive damages (Count VI).[2] Bailey now moves to name the Doe defendants, and Defendants move to dismiss Count V and for summary judgment. [Docs. 29, 35, 42].

## II. ANALYSIS

### A.  Bailey's *Motion to Name John and Jane Doe Defendant*

As an initial matter, the Court addresses Bailey's *Motion to Name John and Jane Doe Defendant*, by which Bailey seeks to name Elizabeth Anne Shipley as a defendant in this action. [Doc. 29]. According to Bailey, discovery has revealed that Shipley, as Director of Community Relations for APS, was the chairperson of the Search and Selection Committee charged with hiring the Director of Community Engagement. [Id.]. In his supporting memorandum, Bailey argues for the addition of Shipley as a defendant in her official

---

[1] Bradford Allison's status as a party in this action is not entirely clear. [See Doc. 7 at 3, "On July 31, 2002, Dr. Bailey again filed a complaint with the four co-superintendents replacing Defendant Allison as superintendent." See also Doc. 44 at 15 n.2, "Defendant Bradford Allison . . . is not represented in this action in his individual capacity."]

[2] A claim of conspiracy (Count IV) was dismissed by stipulation of the parties on February 4, 2004. [See Doc. 37].

capacity as a high-level APS administrator. [Doc. 30]. APS opposes the motion on the ground that it would be both improper and unnecessary to name Shipley, since any claims asserted against her in her official capacity would be duplicative of claims already asserted against APS. [Doc. 31]. In his *Reply to Defendants' [sic] Response to Name John and Jane Doe Defendants*, Bailey, in a footnote, seeks also to name as a defendant Larry Langley, the Search and Selection Committee member who "ranked Plaintiff so as to forbade [sic] him the [Director of Community Engagement] position." [Doc. 39 at unnumbered 2 n.1]. For the first time in his *Reply*, Bailey seeks to name Shipley and Langley in both their individual and official capacities. [Id.].

Government actors may be sued in their individual and/or official capacities. See Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Scheuer v. Rhodes, 416 U.S. 232, 238. What distinguishes individual-capacity actions from official-capacity actions is that the former "seek to impose personal liability upon a government official for actions he takes under color of state law[, whereas the latter] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Graham, 473 U.S. at 165-166 (*quoting* Monell v. New York City Dep't of Social Servs, 436 U.S. 658, 690, n. 55 (1978)). So long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, "in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166 (internal citation omitted). Furthermore, where both a municipality and a municipal officer in his or her official capacity are named as defendants

4

in an action, "the suit against the officer is redundant, confusing, and unnecessary and should be dismissed." Sims v. Unified Gov't of Wyandotte County/Kansas City, Kan., 120 F.Supp.2d 938, 945 (D.Kan. 2000); see also Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1517 (10th Cir. 1995) ("A suit against a city official in his official capacity is no different from a suit against the City itself.")

In this case, Bailey accurately states that municipal actors operating in their official capacities are subject to legal action under 42 U.S.C. §§ 1981 and 1983. [See generally Doc. 30]. However, as was the case in Sims, Bailey's correct statement of the law does not address APS's equally correct observation that naming Shipley and Langley in their official capacities will provide him no additional relief, since Shipley and Langley, in their official capacities, are indistinguishable from APS. [See generally Doc. 31]; see Sims, 120 F.Supp.2d at 944-45 ("While plaintiff's response [that governmental officials may be properly sued in their official capacities] is a correct statement, it does not address defendants' concerns that naming [two individual actors] in their official capacities can afford plaintiff no additional relief because there is no distinction between these defendants in their official capacity and the [governmental defendant].). Because Bailey's claims against Shipley and Langley are identical to those alleged against APS [see generally Docs. 7, 29, 30], the Court concludes that it would be redundant and unnecessary to name Shipley and Langley as defendants in their official capacities. See Sims, 120 F.Supp.2d at 945 (citing Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir.1991) (in § 1983 action,

upholding dismissal of individual defendants sued in their official capacity). Accordingly, to the extent Bailey seeks to name Shipley and Langley as defendants in their official capacities, his *Motion to Name John and Jane Doe Defendant* will be denied.

The same analysis does not, however, apply to Bailey's request to name Shipley and Langley as defendants in their individual capacities. To be sure, "[w]hen a governmental official is sued in his official and individual capacities for acts performed in each capacity, those acts are 'treated as the transactions of two different legal personages.'" Johnson v. Bd. of County Comm'rs for County of Fremont, 85 F.3d 489, 493 (10th Cir. 1996) (*quoting* Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 543 n. 6 (1986). Whereas a government actor sued in his official capacity has no personal stake in the outcome of the litigation, the same actor sued in his individual capacity is subject to personal liability for actions he may have taken under color of state law. Id.; see also Graham, 473 U.S. at 165-166. Accordingly, to the extent Bailey seeks to name Shipley and Langley as defendants in their individual capacities, his *Motion to Name John and Jane Doe Defendant* will be granted.

**B. Standards of Review**

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

6

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

"In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Thus, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp., 130 F.3d at 1384. The Court "'may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

By contrast, summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

7

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id.   Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

## C. Racial Discrimination in Violation of 42 U.S.C. §§ 1981 and 1983 (Counts I and III)

APS and the individual Defendants have moved for summary judgment on Bailey's claims of racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983 (Counts I and

III). [Doc. 42]. As set forth in 42 U.S.C. § 1981,

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Section 1983 provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

In order to establish a prima facie case of racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983, a plaintiff must prove that (1) he belongs to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the plaintiff makes his prima facie case, the burden shifts to the defendant to advance some legitimate, nondiscriminatory reason for its action. Id.[3] The plaintiff may then come

---

[3] Although McDonnell-Douglas involved a Title VII claim, its burden-shifting approach has been held equally applicable in cases involving claims of racial discrimination in violation of

9

forward with evidence tending to show that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). "In a summary judgment setting, the plaintiff must raise a genuine factual question as to whether defendants' reasons are pretextual." Drake v. City of Fort Collins, 927 F.2d 1156, 1160 (10th Cir. 1991).

Defendants concede for purposes of their summary-judgment motion only that Bailey has established a prima facie case of discrimination. They nevertheless advance the following legitimate, nondiscriminatory reason for not including Bailey in the interviewing/hiring process: Bailey did not score high enough on the initial review of resumes to be considered for an interview. [Doc. 43 at 5-6]. Defendants explain in some detail the method by which they selected candidates for interviews and further consideration. [Id. at 6-7].

A total of 57 people submitted timely applications for the position of Director of Community Engagement. Four of those applicants were immediately disqualified for failure to include a cover letter or references. A Search and Selection Committee composed of one white female and one white male, one Hispanic female and one Hispanic male, and one

---

42 U.S.C. §§ 1981 and 1983. English v. Colorado Dep't of Corrections, 248 F.3d 1002, 1007 (10th Cir. 2001) (citation omitted).

African-American female[4] met to screen the remaining 53 applicants to determine if they met the minimum qualifications as described in the job announcement. [Doc. 43 at 6]. Twenty-six applicants who did not satisfy those qualifications were eliminated. The Committee then ranked the remaining 27 applicants in 7 categories, each worth 5 points. Consequently, the highest score an applicant could receive was 35 points. [Id. at 7; see also id., Exh. D, Oct. 13, 2003 depo. of Elizabeth Anne Shipley at 21-22, 26-27]. In light of the number of applicants who had met the minimum qualifications, the Committee chose 30 points as the cut-off score for determining which applicants to interview. [Id.; see also id. Exh. G, Oct. 13, 2003 depo. of Lovie McGee at 40, "[W]e only set the 30 – I think on this one, we had so many people, I think that we said, just as we got ready to start putting them on board, what would be our cutoff . . . [a]nd it was at that point that we said, what would be the highest score? From what to what? 30 and above. And then we said 30 and above."]

Once the numbers were tallied, Bailey's total score was 21. Thus, he and 20 other minimally qualified applicants scoring below 30 were denied interviews. [Doc. 43 at 7]. As to the individual Committee members' knowledge of or familiarity with Bailey at the time the scoring was done, McGee knew him from their work together in the NAACP, Shipley did not know him, and Langley was unsure as to whether he knew who Bailey was. [Id., Exh. D, Oct. 13, 2003 depo. of Elizabeth Anne Shipley at 29; Exh. G, Oct. 13, 2003 depo. of Lovie McGee at 6; Doc. 44, Exh. 2, Dec. 5, 2003 depo. of Larry Langley at 49].

---

[4] The members of the Search and Selection Committee were Shipley, Langley, Marie Hines, Eddie Soto, and Lovie McGee. [Doc. 43, Exh. E].

11

In response, Bailey argues that a material factual question exists as to whether the Committee's scoring method was purposefully designed to prevent the only two African-American applicants, Bailey and Joycelyn Jackson, from reaching the interview stage. [Doc. 44 at 3-4]. According to Bailey, the scoring system was "facially pretextual" because the Committee "injected into [it] 'criterium' [sic] unlisted in the job advertisement and the job description," specifically, fundraising experience. [Id. at 6-7]. Bailey also contends that the decision to interview only those applicants with a score of 30 or above was artificially determined so as to exclude himself and Jackson, who had received a score of 29, from the interview phase. In support, Bailey has provided a third party's comparison of his resume and that of Don Whatley that purports to demonstrate that Bailey's qualifications for the position of Director of Community Engagement "far exceeded" those of Whatley. [Id., Exh. 6, Feb. 18, 2004 "Analysis of Resumes" by Charles E. Mayfield]. Finally, Bailey insists that Shipley's assertion that she did not know Bailey at the time the applicant pool was being winnowed is "[h]ardly a position that is worthy of credence." [Id. at 6-8].

A review of the pleadings, deposition testimony, and other documents convinces the Court that Defendants have satisfied their burden of demonstrating a legitimate, nondiscriminatory reason for denying Bailey an interview. The Court has been unable to find any evidence in the record to suggest that Defendants' scoring method was racially discriminatory. While it is true that Joycelyn Jackson, the other African-American candidate for the position of Director of Community Engagement, missed the 30-point cut-

off score by only one point, so did at least two other applicants, Colleen Keane and Lonnie Barraza. [Doc. 43, Exh. H, "Screening Tally Sheet"). Accordingly, the Court is not convinced that the Committee's decision to interview only those candidates receiving total scores of 30 or higher was improperly made so as to exclude the African-American applicants from the interview process.

Neither is the Court persuaded that the Committee's decision to award or not award points based on the applicants' fundraising experience, when such experience was not listed as one of the qualifications set forth in the job announcement, somehow prejudiced the African-American candidates.[5] Even accepting Bailey's assertion that he and Joycelyn Jackson were the only African-American applicants, the Court notes that 11 applicants other than Bailey received scores of zero for fundraising, and that Jackson actually received 3 fundraising points. [Doc. 47, Exh. K]. As the Tenth Circuit recently explained, "employers are free to employ nondiscriminatory criteria that are 'unfair' or even reprehensible, so long as they are not discriminatory." Neal v. Roche, 349 F.3d 1246, 1252 (10th Cir. 2003) (holding that employer's decision to save white employee from impending layoff by giving that employee preference over African-American employee who did not face layoff did not give rise to an inference of discrimination under the facts of the case). As all candidates for the position of Director of Community Engagement were judged, at least in part, on the

---

[5] The Court notes that the full job announcement states that the position description "indicates the general nature and level of work to be performed. It is not intended to be a comprehensive listing of all functions, duties, skills, knowledge and abilities." [Doc. 43, Exh. B, July 30, 2001 "Management, Professional and Supervisory Vacancies" at unnumbered 3].

13

extent of their fundraising experience, the Court is not persuaded that the inclusion of that category prejudiced only the two African-American applicants.

The Court also finds that Bailey has not demonstrated that his race was any sort of factor in the Committee's decision not to grant him an interview. [see Doc. 44 at 1]. For example, when asked if she had been motivated to discriminate against Bailey on the basis of race, Committee member Lovie McGee responded, "There was no discrimination." When asked if she had heard "of any discussions or anything that could be characterized as outward discrimination or animus toward African-American applicants" McGee similarly answered, "There was no discussion." [Doc. 43, Exh. G, Oct. 13, 2003 depo. of Lovie McGee at 75-78]. Langley also testified that there was no discussion among Committee members about "weed[ing] out or discriminat[ing] against the African-American applicants." [Id., Exh. J, Dec. 5, 2003 depo. of Larry Langley at 63-64]. Shipley testified that, during the application process, she did not even know who Bailey was. [Id., Exh. D, Oct. 13, 2003 depo. of Elizabeth Anne Shipley at 29]. In response, Bailey offers nothing more than the bare statement that "[c]ommittee members had information concerning Dr. Harold Bailey, . . . his race was known to committee members, and his race . . . [was a] factor[] in Plaintiff not being given an interview." [Doc. 44 at 1; see also Doc. 43]. However, when asked during depositions if he possessed any facts or evidence that Committee members were motivated to score Bailey poorly because of his race, Bailey responded "No." [Doc. 43, Exh. A, Sept. 30, 2003 depo. of Harold Bailey at 97].

14

Finally, the Court does not believe that Charles E. Mayfield's analysis of the resumes of Bailey and Don Whatley, and his conclusion that Bailey's qualifications "far exceeded" those of Whatley, assists Bailey in his effort to show that Defendants' proffered reason for denying him an interview was a pretext for discrimination. [See Doc. 44, Exh. 6, Feb. 18, 2004 "Analysis of Resumes" by Charles E. Mayfield]. Importantly, Mayfield was not a member of the Search and Selection Committee. [See Doc. 43, Exh. E]. Even Shipley, the Committee Chairperson, when asked during her deposition to re-rate Bailey, expressed discomfort in attempting to do so absent the other Committee members' input, since "[t]ime [had] passed . . . the circumstances [were] different . . . [and i]t would be difficult for [her] to rate [Bailey's resume] out of context." [Doc. 43, Exh. D, Oct. 13, 2003 depo. of Elizabeth Anne Shipley at 51]. When presented with two job candidates, "it is within the employer's discretion to choose [between] them so long as the decision is not based on unlawful criteria." Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999) (quotation omitted). For, as the Tenth Circuit has explained, the task of the Court is "to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." Id. (quotation omitted). Because the Court finds that Bailey has not presented evidence of pretext sufficient to withstand *Defendants' Summary Judgment Motion*, or shown that Defendants' explanations are undeserving of credence, summary judgment will be granted with respect to Counts I and III.

15

### D.  First Amendment Violations (Count II)

APS and the individual Defendants have also moved for summary judgment on Bailey's First Amendment claims. [Doc. 43 at 8-10]. Bailey has alleged that Defendants denied him an interview for the position of Director of Community Engagement in retaliation for his having (1) advocated and promoted the causes of racial equality and civil and human rights, and (2) filed complaints against APS both with the United States Department of Education and APS's EEO office. Bailey contends that Defendants' actions were taken in violation of his First Amendment rights of free speech and political association and to petition the government for redress of grievances. [Doc. 7 at 5].

Analysis of a public employee's claim of retaliation in violation of the First Amendment begins with a review of the so-called four-prong test articulated in <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1968) and <u>Connick v. Myers</u>, 461 U.S. 138 (1983). The Court first asks whether the speech at issue concerns a matter of public concern. If so, the Court must then balance the employee's interest as a citizen in commenting upon matters of public concern against "the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees." <u>Pickering</u>, 391 U.S. at 568. If the balance tips in favor of the employee, the employee must then prove "that the protected speech was a substantial factor or a motivating factor in the detrimental employment decision." <u>Gardetto v. Mason</u>, 100 F.3d 803, 811 (10th Cir. 1996). Only then does the burden shift to the employer to demonstrate "by a preponderance of evidence that it would

16

have reached the same decision . . . even in the absence of the protected conduct." Id. (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

Defendants in this case concede for purposes of their summary-judgment motion only that Bailey has shown that his speech and advocacy involve matters of public concern and that his interest as a citizen speaking out on such issues outweighs Defendants' interest in promoting the efficiency of its services. [Doc. 43]. Defendants insist, however, that "there is absolutely no evidence in the record that [Bailey's] allegedly protected speech was a factor in his non-selection for the Director of Community Engagement position." [Doc. 43 at 9]. For his part, Bailey asserts that he was warned by APS President Richard Toledo "of the possibility of 'reprisals' because of his speech[,]" and that Defendants' decision not to grant him an interview must have been at least partially motivated by his speech, given that "[i]t is simply incredulous that [Committee Chairperson Shipley] would somehow not know of . . . Bailey's civil rights activities and complaints within A.P.S." [Doc. 44 at 11].

Even when viewed in a light most favorable to Bailey, the facts of this case do not support a reasonable conclusion that Defendants' decision to deny him an interview was motivated by his First Amendment activities. Again, Shipley and Langley both testified that they were unaware of Bailey's community activism history of filing complaints against APS. [Doc. 43, Exh. D, Oct. 13, 2003 depo. of Elizabeth Anne Shipley at 53; Exh. J, Dec. 5, 2003 depo. of Larry Langley at 24.] Lovie McGee, who was aware of Bailey's protected activities, testified that those activities simply were not discussed or made an issue by

17

Committee members.[6]  In fact, when asked if, during the scoring of the applicants, the issue

of Bailey's advocacy and/or lawsuits ever arose, McGee responded, "The answer is no. We

did not discuss anything like that, absolutely not." [Id., Exh. G, Oct. 13, 2003 depo. of Lovie

McGee at 25].  As for warnings by APS President Toledo "of the possibility of 'reprisals'

because of [Bailey's] speech," [Doc. 44 at 11], the Court notes that, in his deposition

testimony, Bailey stated that Toledo had asked whether Bailey believed there might be a

reprisal for his having filed complaints against APS.  [Id., Exh. 4, Sept. 30, 2003 depo. of

Harold Bailey at 253-54].   The Court does not interpret this query as a warning.

Additionally, aside from the conclusory statement that "[i]t is simply incredulous that

[Committee Chairperson Shipley] would somehow not know of . . . Bailey's civil rights

activities and complaints within A.P.S[,]" [Doc. 44 at 11], Bailey has offered no evidence

tending to create a genuine issue of material fact on this issue.  See Fed.R.Civ.P. 56(e).

Accordingly, the Court finds that Defendants are entitled to summary judgment with respect

to Bailey's First Amendment claims.

### E.  State-Law Contract Claims (Count V)

Bailey has asserted a state-law claim for breach of contract.  Pursuant to Fed.R.Civ.P.

12(b)(6), Defendants have moved to dismiss the contract claims on the ground that the Court

lacks jurisdiction over them inasmuch as they are preempted by § 301 of the Labor

---

[6] McGee stated that, while she was aware of Bailey's complaint with the Department of
Education, she was unaware that he was a force in advocating racial equality within the APS
system.  [Doc. 43, Exh. G, Oct. 13, 2003 depo. of Lovie McGee at 7].

Management Relations Act (LMRA).[7] [Doc. 35]. Defendants submit that any state-law contract claims are preempted because their resolution is substantially dependent on an analysis of the terms of a collective bargaining agreement (CBA) executed by APS and the teachers' union to which Bailey belongs. [Doc. 36 at 2-5]. Bailey counters that his claims stem not from the CBA but, rather, from the APS employee handbook, which prohibits racial discrimination in the workplace. Bailey also appears to argue that, by failing promptly to investigate his EEO complaint, Defendants breached that specific provision of the employee handbook addressing the EEO complaint process. According to Bailey, these claims can be resolved without interpretation of the CBA, and are therefore not preempted by the LMRA. [See generally Doc. 39].

Jurisdiction over Bailey's contract claims is premised on 28 U.S.C. § 1367(a). [See Doc. 7 at 2, "Jurisdiction is based upon . . . pendent jurisdiction."] That statutory section provides, in pertinent part, that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court may, however, decline to exercise its supplemental jurisdiction where, among other things, the court has dismissed all other claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). To be sure, a court's supplemental jurisdiction

need not be exercised in every case in which it is found to exist.

---

[7] Defendants have also moved for summary judgment with respect to Count V. [Doc. 43 at 10-14].

> It has consistently been recognized that [supplemental]
> jurisdiction is a doctrine of discretion, not of plaintiff's right.
> Certainly, if the federal claims are dismissed before trial, even
> though not insubstantial in a jurisdictional sense, the state
> claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Having deemed summary

judgment appropriate with respect to those claims over which it has original jurisdiction, the

Court declines to exercise supplemental jurisdiction over Bailey's state-law contract claim.

See id.; Tonkovich v. Kansas Bd. of Regents, Univ. of Kansas, 254 F.3d 941, 945-46 (10th

Cir. 2001); 28 U.S.C. § 1367(c)(3).

### F. Individual Defendants' Entitlement to Qualified Immunity

The individual Defendants (Lynn, Jane Doe (Shipley), and John Doe (Langley)) have

moved for summary judgment on the basis of qualified immunity, arguing that, while Bailey

"has undoubtedly asserted a violation of a clearly established right, the individual

Defendants' *conduct* was not so obviously wrong in light of preexisting law that only a

plainly incompetent official or one who is knowingly violating the law would have done

such a thing." [Doc. 43 at 15] (emphasis in original). Bailey responds that (1) Defendants'

unlawful conduct is clear, (2) it is reasonable to infer from the record that Shipley was

motivated by racial animus when she decided to consider fundraising experience when

selecting candidates to be interviewed for the position of Director of Community

Engagement, and (3) the unlawful conduct of both Shipley and Langley was motivated by

their desire to punish Bailey for his civil rights advocacy. [Doc. 44 at 14-16].

20

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998) (internal quotations omitted). "In the context of a summary judgment motion, to prevail against a qualified immunity defense, the plaintiff must 'come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred.'" Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1026 (10th Cir. 1994) (quoting Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988). Only if the plaintiff satisfies both elements does the defendant bear the normal burden of the summary-judgment movant of showing that no material factual issues remain to defeat his claim of qualified immunity. Id. A plaintiff ordinarily demonstrates that a law is clearly established by showing that there is a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts has determined the law to be as the plaintiff maintains. Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (a right is clearly established if the contours of the right are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right.")

The plaintiff's burden in this situation is not a light one. Jantz v. Muci, 976 F.2d 623,

627 (10th Cir. 1992) ("A defendant government official need only raise the qualified immunity defense to shift the summary judgment burden to the plaintiff. This burden is quite heavy, for the plaintiff must do more than simply allege the violation of a general legal precept.") A district court's determination as to whether the right is clearly established often turns on the level of generality to be applied, for "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter v. Dep't of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998). For example, in Anderson v Creighton, the United States Supreme Court noted that the Fourth Amendment right to be free from unreasonable searches and seizures was clearly established, but held that it was not clear whether the Fourth Amendment's protections extended to the particular factual situation at issue in that case. Id. (citing Anderson, 483 U.S. at 639-40). Indeed, an overly general approach "would destroy 'the balance that . . . cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties[.]" and allow plaintiffs "to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Anderson, 483 U.S. at 639 (quotation omitted). To address this concern, the Tenth Circuit requires some, but not necessarily precise, factual correspondence between the cases cited by a plaintiff and the factual situation at hand. Horstkoetter, 159 F.3d at 1278 (internal quotation omitted).

In this case, Defendants appear to take conflicting positions as to whether Bailey has satisfied the first part of the qualified-immunity test. In their memorandum in support of

their summary-judgment motion, Defendants state that Bailey "has undoubtedly asserted a violation of a clearly established right . . . ." [Doc. 43 at 15]. Yet in their reply brief, Defendants submit that once they raised the issue of qualified immunity, Bailey "was required to 'demonstrate the substantial correspondence between the conduct in question and the prior law allegedly establishing that [D]efendants' actions were clearly prohibited.'" [Doc. 47 at 10-11]. The Court, however, does not believe that Bailey has satisfied his burden of establishing the violation of a right that has been clearly established by Supreme Court, Tenth Circuit, or other authority. See Medina, 960 F.2d at 1498.

Bailey advances Pickering and Connick for the dual propositions that "a school system may not punish a teacher because of a teacher's exercise of his First Amendment rights . . . [and] that statements about a school system's allegedly racially discriminatory policies involve a matter of public concern." [Doc. 44 at 15]. While the Court does not dispute the accuracy of Bailey's reading of existing case law, the Court believes that Bailey's interpretation represents the overly general approach that threatens to convert the rule of qualified immunity into a rule of virtually unqualified liability as a result of plaintiffs who allege nothing more than the violation of "extremely abstract rights." See Anderson, 483 U.S. at 639. Bailey has directed the Court to no authority tending to show, for instance, that the inclusion of a scoring or judging criterium (fundraising experience, in this case) that was not listed or otherwise detailed in a posted job announcement is somehow racially discriminatory. See Horstkoetter, 159 F.3d at 1278 (requiring at least some factual

correspondence between the cases cited by a plaintiff and the factual situation at hand). Even if the Court were to find that Bailey has demonstrated the violation of a clearly established law, the Court nevertheless concludes that Bailey has failed to show that Defendants' conduct was such that a reasonable person would have know that he or she was violating that law. See Maestas v. Lujan, 351 F.3d 1001, 1009 (10th Cir. 2003). Again, despite Bailey's conclusory statement that "[i]t is clear that the [D]efendants['] conduct was unlawful[,]" [Doc. 44 at 15], he has set forth no facts establishing that the decision to score the Director of Community Engagement applicants in part on the basis of their fundraising experience somehow prejudiced the two African-American applicants. He similarly has not advanced specific facts tending to show that either Shipley or Langley knew of his advocacy in the areas of civil and human rights and denied him an interview because of it. As Bailey has failed to meet his evidentiary burden on this issue, the Court concludes that the individual Defendants are entitled to qualified immunity. See Pallottino, 31 F.3d at 1026.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that (1) Plaintiff's *Motion to Name John and Jane Doe Defendant* is due to be **granted in part and denied in part** (2) Defendants' *Motion to Dismiss* is due to be **denied as moot**, and (3) *Defendants' Summary Judgment Motion* is due to be **granted.**

**IT IS, THEREFORE, ORDERED** that Plaintiff's *Motion to Name John and Jane Doe Defendant* [Doc. 29] is **GRANTED** to the extent Plaintiff seeks to name Elizabeth

24

Anne Shipley and Larry Langley as defendants in their individual capacities.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion to Name John and Jane Doe Defendant* [Doc. 29] is **DENIED** to the extent Plaintiff seeks to name Elizabeth Anne Shipley and Larry Langley as defendants in their official capacities.

**IT IS FURTHER ORDERED** that Defendants' *Motion to Dismiss* [Doc. 35] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that *Defendants' Summary Judgment Motion* [Doc. 42] is **GRANTED** in its entirety.

**SO ORDERED** this 30th day of June, 2004, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge